Laura E. Rosenbaum, OSB No. 110061
laura.rosenbaum@stoel.com
Noah H. Morss, OSB No. 172845
noah.morss@stoel.com
STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000
Portland, OR  97205
Telephone:  503.224.3380
Facsimile:  503.220.2480

Attorneys for Defendant Kaiser Foundation
Health Plan of the Northwest

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| EMILY CASTELLANOS, | Case No.: 6:22-CV-00149 |
| Plaintiff, | **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1331, 1441, and 1446** |
| v. | |
| KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST; SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 49, | |
| Defendants. | |

**TO:**      **THE CLERK OF THE ABOVE-ENTITLED COURT**

**AND TO:**    **PLAINTIFF EMILY CASTELLANOS**

**AND TO:**    **SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 49**

Page 1  -  NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1331, 1441, and 1446

**PLEASE TAKE NOTICE** that, pursuant to 28 U.S.C. § 1441, Defendant Kaiser Foundation Health Plan of the Northwest ("Kaiser") hereby removes to this Court the state court action described below.

1.      On October 14, 2021, an action was commenced against Kaiser in the Circuit Court of the State of Oregon in the County of Marion, entitled *Emily Castellanos v. Kaiser Foundation Hospitals*, No. 21CV40666 ("State Action").  Plaintiff filed her First Amended Complaint against Kaiser on December 6, 2021, adding Service Employees International Union Local 49 ("SEIU") as a Defendant.  Attached as Exhibit 1 are copies of the First Amended Complaint and the Complaint.

2.      On December 28, 2021, Kaiser was served with a copy of the Summons and First Amended Complaint.  Attached as Exhibit 2 are copies of the Proofs of Service, Summonses, and the Acceptance of Service.

3.      Exhibits 1 and 2 constitute all of the process, pleadings and orders in the State Action to date.

4.      This Removal Notice is filed timely within 30 days after service of process under 28 U.S.C. § 1446(b).

5.      Kaiser did not answer or otherwise respond to the Complaint or the First Amended Complaint prior to filing this Notice of Removal and the associated paperwork. Kaiser will file its Answer in this court upon Removal.

6.      The First Amended Complaint makes allegations that require interpretation of a Collective Bargaining agreement between Kaiser and Defendant Service Employees International Union.

112838411.3 0056200- 00171

7.      This action is a civil action of which this Court has original jurisdiction under 28 U.S.C. § 1331, and is one which may be properly removed to this Court pursuant to 28 U.S.C. § 1441(a) because Plaintiff's First Amended Complaint asserts claims that are preempted by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).

8.      Removal to the United States District Court for the District of Oregon, Eugene Division, is proper because it is the judicial district embracing the place where this action is pending.  *See* 28 U.S.C. § 1441(a); Local Rule 3-2(a).

9.      Upon filing this Notice of Removal, Kaiser shall give written notice to Marcus Vejar and Amanda Reilly, attorneys for Plaintiff.  Defendant SEIU has not yet appeared in this case.  Kaiser shall also file a copy of the Notice of Removal with the Clerk of the Circuit Court of the State of Oregon for the County of Marion, as required by 28 U.S.C. § 1446(d).

10.     By filing this Notice of Removal, Kaiser does not waive, and expressly reserves, any defenses that may be available.

WHEREFORE, Kaiser removes the above-captioned action now pending against it in the Circuit Court of the State of Oregon for the County of Marion to the U.S. District Court for the District of Oregon, Eugene Division, where it shall proceed as an action originally commenced there.

DATED:  January 27, 2022.

STOEL RIVES LLP

/s/ *Laura E. Rosenbaum*
LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
NOAH H. MORSS, OSB No. 172845
noah.morss@stoel.com
Telephone:  503.224.3380

Attorneys for Defendant Kaiser

Page 3   -   NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1331, 1441, and 1446

## CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. §§ 1331, 1441, and 1446** on the following named person(s) on the date indicated below by

☒    mailing with postage prepaid

☐    hand delivery

☐    facsimile transmission

☐    overnight delivery

☒    email

☒    notice of electronic filing using the Cm/ECF system

to said person(s) a true copy thereof, and if by mail, contained in a sealed envelope, addressed to said person(s) at his or her last-known address(es) indicated below.

> Marcus I. Vejar
> Amanda L. Reilly
> Lafky & Lafky
> 429 Court St. NE
> Salem, OR 97301
> mvejar@lafky.com
> areilly@lafky.com

DATED:  January 27, 2022.

STOEL RIVES LLP


/s/ *Laura E. Rosenbaum*
LAURA E. ROSENBAUM, OSB No. 110061
laura.rosenbaum@stoel.com
NOAH H. MORSS, OSB No. 172845
noah.morss@stoel.com

Attorneys for Defendant


Page 1   -   CERTIFICATE OF SERVICE

1
2
3
4

IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MARION

| | |
|---|---|
| EMILY CASTELLANOS, | ) Case No. <u>21CV40666</u> |
| | ) |
| Plaintiff, | ) COMPLAINT- WHISTLEBLOWER |
| | ) DISCRIMINATION (ORS 659A.199); |
| v. | ) WRONGFUL TERMINATION; NURSE |
| | ) STAFFING LAWS (441.181); BREACH OF |
| KAISER FOUNDATION HOSPITALS, | ) CONTRACT |
| | ) |
| Defendant. | ) (Jury Trial Requested; Not Subject to |
| | ) Mandatory Arbitration) |
| | ) |
| | ) (Prayer for Relief: $500,000) |
| | ) |
| _____ | ) |

Emily Castellanos ("Plaintiff") alleges:

## JURISDICTION AND VENUE

1.

Plaintiff is a resident of Marion County, Oregon. Defendant Kaiser Foundation Hospitals ("Defendant"), is national organization with offices and hospitals throughout the country, including in Marion County Oregon. The North Lancaster Urgent Care operated by Defendant located in Marion County, Oregon was the physical place of employment for Plaintiff.

2.

Venue and jurisdiction are proper in this Court because Defendant is a business entity which owns and operates locations within Marion County Oregon.

3.

The events giving rise to this complaint occurred primarily in Marion County, Oregon.

**COMPLAINT - 1**

EXHIBIT 1
Page 1 of 9

1

2  **4.**

  Defendant is an "employer" as defined in ORS Chapter 659A.106, and employs more

3  than six (6) employees.

4  **5.**

5  Plaintiff requests a jury trial in this matter.

6  **FACTUAL ALLEGATIONS**

7  **6.**

8  Plaintiff was employed by Defendant and worked there for approximately 4 years, holding

9  the title of Licensed Practical Nurse at the time of termination. Plaintiff worked in Primary Care for

10  Defendant for roughly 2 years before being transferred to Urgent Care. Plaintiff was primarily

11  working from the North Lancaster location prior to her termination on October 17th, 2020. Plaintiff

12  worked part-time, 20 hours per week for Defendant and chose to continue with this schedule, despite

13  being offered a full-time position with Defendant. Plaintiff had been described as a hardworking

14  nurse that is determined to give her best care to her patients. There was no history of corrective

15  action, ethical problems, or concerns regarding her standard of care prior to her termination.

16  **7.**

17  Approximately 1-2 months prior to September 19th, 2020, Plaintiff was approached by her

18  supervisor and was informed that Defendant was struggling financially and employees working

19  under 40 coded hours were offered to move full-time. At the time, Plaintiff was then informed by

20  her supervisor that she was looking out for the employees because she heard that it was "coming

21  down the pipeline that they are wanting to get rid of part-time employees in our department." Despite

22  having this information, Plaintiff declined the offer as she was a full-time RN student.

23  **8.**

24  On September 19th, 2020, Plaintiff was informed that employee Tirzah Lanoie would be

25  acting as supervisor for Saturdays as Aimee Orr-Besa, who is the typical department supervisor, is

26  out of the office on Saturdays. Ms. Lanoie then had let staff know that they could come to her with

27  any concerns or questions. Upon asking how the day looked, Ms. Lanoie was informed that they

28

**COMPLAINT - 2**

EXHIBIT 1
Page 2 of 9

1    were very short staffed and she responded that they had two Medical Assistants working in primary

2    care who could potentially help out. Ms. Lanoie had then stated that both employees could help with

3    rooming patients, immunizations, and COVID tests. Ms. Lanoie noted that these employees were

4    both trained and checked off by her for COVID testing. Not long after, Plaintiff had left the area to

5    work on her morning tasks.

6                                                      9.

7          Around 1pm on September 19th, 2020, Ms. Lanoie came to Plaintiff's department to inform

8    them that the two Medical Assistants were willing to stay and help out. Ms. Lanoie, along with

9    another employee, began to help the Medical Assistants in their preparations. The Medical Assistants

10   were shown the testing room for the COVID tests and the swabs. Plaintiff informed her coworkers

11   that since they have the help, Plaintiff would get on top of the nursing tasks that the Medical

12   Assistants were unable to cover. Prior to this, Plaintiff was preparing the COVID swabs and then

13   moved to more time sensitive concerns that had to take priority. Plaintiff had agreed with her

14   coworker, Staci Hoover, that the Medical Assistants could do the COVID swabs to best utilize the

15   Medical Assistants and allow for Plaintiff to focus on nursing tasks. Plaintiff did not delegate these

16   tasks to the Medical Assistants and assisted them in preparations only after the Medical Assistants

17   had volunteered and were approved by management.  Plaintiff then left to work on nursing tasks and

18   reminded her other coworkers about the restrictions on the tests Licensed Practical Nurses and

19   Medical Assistants could administer.

20                                                    10.

21         Around 6:15 on September 19th, 2020, after the last patient was discharged, Lenae Trussell,

22   Plaintiff's shift lead, sat down with Plaintiff and Ms. Hoover to let them know she was disappointed

23   in the decision to allow Medical Assistants to administer the COVID tests. This was contradictory

24   to the protocol that had been given to Plaintiff regarding who could administer the tests. Plaintiff

25   informed Ms. Trussell that they were following protocol and that Ms. Lanoie had stated expressly

26   that the Medical Assistants assisting were trained and checked off by her directly. Plaintiff then

27   apologized that she upset Ms. Trussell and that they were overwhelmed and did the best they could

28

**COMPLAINT - 3**

EXHIBIT 1
Page 3 of 9

with the resources given. As Plaintiff was not usually working on Saturdays, she was simply going off protocol and what Ms. Lanoie had informed them. Plaintiff did not apologize as to any recognition of wrong doing as this practice was clearly allowed by protocol, but did feel remorseful that Ms. Trussell was upset over the situation. Despite this lecture from Ms. Trussell, she had notified staff via a note that she was impressed at the hard-work displayed by staff throughout the busy day.

11.

The following day, on September 20th, 2020, Ms. Orr-Besa had went to check-in with the team. At that time, Plaintiff informed Ms. Orr-Besa that the previous day had terrible staffing issues and that the day was a nightmare, with Plaintiff feeling as though she was drowning in work. Plaintiff noted she had too many nursing tasks to do in a safe and efficient manner and there could have been medical errors made due to the complete lack of support. Plaintiff shared that Ms. Trussell did not support the staff when this happened and Plaintiff had an excessively difficult time coping with the impossible workload. Plaintiff had approached Ms. Trussell while she was overwhelmed and Plaintiff was told that this was the job and her complaints concerning staffing were dismissed. This situation was made worse by Ms. Trussell's decision to scold and lecture Plaintiff and Ms. Hoover after the shift. A week after the incident, Plaintiff had met with Ms. Orr-Besa in her office to discuss the staffing issues further and discussed calling the compliance hotline provided to employees for issues. In addition to these complaints, Plaintiff stressed that, due to the staffing issues, it may not be possible to treat certain conditions at any given time in Urgent Care, which could lead to potential complications, including death of a patient. Plaintiff was instructed not to contact this number and was later questioned about the compliance hotline as Plaintiff had informed another employee that she could use the hotline if the employee was concerned about reporting issues to management.

12.

On October 4th, 2020, Plaintiff was informed that she would need to participate in a discovery meeting with her employer to discuss the events of September 19th, 2020. Plaintiff was given no

**COMPLAINT - 4**

EXHIBIT 1
Page 4 of 9

1    basic information as to what the meeting would be concerning outside of addressing potential fraud,

2    waste, and abuse of position and it was not clear that Plaintiff was to be disciplined at this meeting.

3    Plaintiff is aware that employees may participate in discovery meetings that do not directly address

4    their conduct. Furthermore, Defendant made no assertion to Plaintiff that she was unable to

5    communicate with fellow employees about the meeting. That night, Plaintiff had spoken with Ms.

6    Hoover regarding the meeting, simply to inquire if she had a meeting scheduled as well. This

7    conversation was fairly brief as both Plaintiff and Ms. Hoover were unaware of what the meeting

8    was for. Plaintiff later learned that Defendant had taken Ms. Hoover's statement on September 29th,

9    2020, prior to Plaintiff's communication with Ms. Hoover and prior to Plaintiff's knowledge of the

10   discovery meeting.

11                                                    13.

12       The discovery meeting took place October 17th, 2020 and this was to discipline Plaintiff for

13   her conduct on September 19th, 2020, despite the fact that she was acting according to protocol, had

14   express permission from the acting supervisor that ratified her conduct, and no other employees were

15   disciplined or reprimanded. In complete disregard to Defendant's discharge of Plaintiff, Defendant

16   allegedly still used Medical Assistants to administer COVID testing. At the conclusion of this

17   meeting, Plaintiff was terminated and began the grievance process with her union to address the

18   termination. This grievance process resulted in Plaintiff's termination being upheld. Plaintiff

19   vehemently disputes this termination and the union's conduct in addressing her grievances. At the

20   time of termination, Plaintiff was covered under a Collective Bargaining Agreement between Kaiser

21   Foundation Hospitals and the Service Employees International Union Local 49.

22                                                    14.

23       As a result of his termination, Plaintiff has now sustained approximately $150,000 in

24   economic damages including lost wages, benefits of employment, and continuing therapy costs

25   associated with this incident to be proven with more particularity at trial with an additional $350,00

26   in non-economic damages. Furthermore, Plaintiff requests continuing lost wages and benefits as

27   compensation for her wrongful termination.

28

COMPLAINT - 5

EXHIBIT 1
Page 5 of 9

1

2    **FIRST CLAIM FOR RELIEF AGAINST DEFENDANT–STATE STATUTORY**
     **WHISTLEBLOWER DISCRIMINATION**

3
                                          15.
4
     Plaintiff realleges paragraphs 1-14 above. According to ORS 659.199(1), "It is an unlawful
5
employment practice for an employer to discharge, demote, suspend or in any manner discriminate
6
or retaliate against an employee with regard to promotion, compensation or other terms, conditions
7
or privileges of employment for the reason that the employee has in good faith reported information
8
that the employee believes is evidence of a violation of a state or federal law, rule or regulation."
9

10
                                          16.
11
     As described in detail above, Plaintiff had made an official complaint to her manager
12
regarding issues of nurse staffing on two separate occasions, stressing the difficulty of the job with
13
the staffing issues and impacts it has on staff. This report is protected under ORS 441.181 which
14
states that a hospital may not take retaliatory action against nursing staff because the nursing staff,
15
"Discloses or intends to disclose to a manager, a private accreditation organization or a public body
16
an activity, policy or practice of the hospital or of a hospital that the nursing staff reasonably believes
17
is in violation of law or a rule or is a violation of professional standards of practice that the nursing
18
staff reasonably believes poses a risk to the health, safety or welfare of a patient or the public."
19
Plaintiff had expressed her concerns about staff and the impact it would have on their ability to
20
exercise proper care for the patients.
21
                                          17.
22
     Plaintiff did not receive notice of the proposed discipline for two weeks after the incident had
23
taken place and Plaintiff was the only person disciplined terminated for this incident. This was after
24
Plaintiff had made complaints to management on two separate occasions and had informed another
25
employee of their right to use the compliance hotline provided to staff, which Plaintiff was
26
discouraged from utilizing.
27
                                          18.
28
COMPLAINT - 6

EXHIBIT 1
Page 6 of 9

As a result of Defendant's violation of ORS 659A.199(1), Plaintiff requests equitable relief, economic damages as set forth in paragraph 14, along with reasonable costs and attorney fees pursuant to ORS 659A.885.

## SECOND CLAIM FOR RELIEF AGAINST DEFENDANT–WRONGFUL TERMINATION

19.

Plaintiff realleges paragraphs 1-18 above. Defendant terminated Plaintiff because she exercised a legal right to make a report to management concerning the potential violations, the impacts the staffing was having on the care of patients, and the difficulty staff was having in properly completing their job duties. According to Section 49.0 of the Collective Bargaining Agreement Plaintiff was covered by, no employee is to be disciplined or discharged without just cause. No other employee faced similar discipline or discharge as Plaintiff for this conduct and Defendant bypassed its progressive discipline process. The stated reasons Defendant gave in the notice of termination completely disregards the protocol given to staff regarding the Medical Assistants Guidance provided. The foundation Defendant based its termination on is not supported by the actual events of September 19th, 2020 and the Defendant's failure to engage in progressive discipline demonstrates its ulterior motives for terminating Plaintiff.

22.

As a result of Defendant's wrongful termination of Plaintiff due to the complaints made protected by law and in violation of ORS 441.181, Plaintiff requests remedies consistent with her requests in paragraph 14 of this complaint.

## THIRD CLAIM FOR RELIEF AGAINST DEFENDANT–-NURSE STAFFING LAWS (441.181)

23.

Plaintiff realleges paragraphs 1-22 above. Pursuant to ORS 441.181, a hospital may not take retaliatory action against a nursing staff because the nursing staff discloses or intends to disclose to a manager, a private accreditation organization or a public body an activity, policy or practice of the hospital or of a hospital that the nursing staff reasonably believes is in violation of law or a rule or

**COMPLAINT - 7**

EXHIBIT 1
Page 7 of 9

1    is a violation of professional standards of practice that the nursing staff reasonably believes poses

2    a risk to the health, safety or welfare of a patient or the public.

3                                                    24.

4          Pursuant to ORS 441.183, a nursing staff aggrieved by an act prohibited by ORS 441.181

5    may bring an action in circuit court of the county in which the hospital is located. All remedies

6    available in a common law tort action are available to a nursing staff if the nursing staff prevails in

7    an action brought under this subsection and are in addition to any remedies provided in subsection

8    (2) of this section. This would include the following remedies which Plaintiff is pursuing:

9          (1) Reinstate the nursing staff to the same or equivalent position that the nursing staff

10         held before the retaliatory action;

11         (2) Reinstate full benefits and seniority rights to the nursing staff as if the nursing staff

12         had continued in employment;

13         (3) Compensate the nursing staff for lost wages, benefits and other remuneration,

14         including interest, as if the nursing staff had continued in employment;

15         (4) Order the hospital to pay reasonable litigation costs of the nursing staff, including

16         reasonable expert witness fees and reasonable attorney fees; and

17         (5) Award punitive damages as provided in ORS 31.730

18                                                   25.

19         As explained above, Plaintiff made complaints to management on two separate occasions

20   regarding staffing issues and the potential impacts it was having on patient care. Not long after these

21   protected complaints were made, Plaintiff was subjected to termination without progressive

22   discipline and without just cause. For these reasons, Plaintiff requests relief consistent with

23   paragraph 14 and 24 of this complaint for the violations under ORS 441.181, including reasonable

24   attorney fees, provided under ORS 441.183(2)(e).

25   **FOURTH CLAIM FOR RELIEF AGAINST DEFENDANT–BREACH OF CONTRACT**

26                                                   26.

27         Plaintiff realleges paragraphs 1-25 above. As stated above, Plaintiff was covered by a

28

**COMPLAINT - 8**

EXHIBIT 1
Page 8 of 9

Collective Bargaining Agreement as a represented employee. As part of this agreement, Section 49.1, no employee is to be disciplined or discharged without just cause. As Plaintiff was terminated without just cause, Defendant knowingly breached the contract that covered Plaintiff's employment.

27.

As Defendant knowingly breached the agreement between itself and Plaintiff, Plaintiff is requesting to be made whole as though the contract was properly enforced between Plaintiff and Defendant. For this reason, Plaintiff is requesting reinstatement, along with her lost wages and benefits, as are guaranteed by the Collective Bargaining Agreement covering Plaintiff's employment.

WHEREFORE, Plaintiff demands the following for his claims for relief:

    1.    Economic damages in an amount to be proven at trial, which sum is alleged to be $150,000, along with continuing lost wages and benefits and $350,00 in non-economic damages.

    2.    Expert witness fees, interest, costs and reasonable attorney fees pursuant to ORS 659A.885;

    4.    Equitable relief in the form of reinstatement;

    5.    Reasonable litigation costs of Plaintiff, including reasonable expert witness fees and reasonable attorney fees pursuant to ORS 441.183.

    6.    Such other relief as this Court may Order.

DATED this 14th day of October, 2021.

*/s/ Marcus I. Vejar*
Marcus I. Vejar, OSB#194708
Amanda L. Reilly, OSB#194422
Of Attorneys for Plaintiff

**COMPLAINT - 9**

EXHIBIT 1
Page 9 of 9

1

2

3

4

5                    IN THE CIRCUIT COURT FOR THE STATE OF OREGON

6                          FOR THE COUNTY OF MARION

7    EMILY CASTELLANOS,                        Case No. 21CV40666

8              Plaintiff,
                                               ACCEPTANCE OF SERVICE
9        v.

10
     KAISER FOUNDATION HEALTH
11   PLAN OF THE NORTHWEST;
     SERVICE EMPLOYEES
12   INTERNATIONAL UNION LOCAL
     49,
13
               Defendants.
14
         I, Laura Rosenbaum, hereby accept service of a true copy of the Complaint heretofore
15
     filed in the above-entitled matter, along with the summons, on behalf of the defendant, KAISER
16
     FOUNDATION HEALTH PLAN OF THE NORTHWEST.  I hereby attest that I am duly
17
     authorized by my client to accept this service.
18

19
         DATED this 28th day of December 2021.
20

21                                              Laura E Rosenbaum OSB#110061
                                                lerosenbaum@stoel.com
22                                              Stoel Rives LLP
                                                760 SW Ninth Ave Ste 3000
23                                              Portland OR  97205
                                                Attorney for Defendant Kaiser Foundation
24                                               Health Plan of the Northwest

25

26

27

28

**1 - ACCEPTANCE OF SERVICE**

EXHIBIT 2
Page 1 of 2

## AFFIDAVIT OF SERVICE

### IN THE CIRCUIT COURT OF THE STATE OF OREGON
### IN AND FOR THE COUNTY OF MARION

Case Number: 21CV40666

Plaintiff: **EMILY CASTELLANOS**
vs.
Defendant: **KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST; SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 49,**

Service Documents:
Summons and First Amended Complaint

For:
Lafky & Lafky
429 Court Street N.E.
Salem, OR 97301

Received by MALSTROM'S PROCESS SERVING CO. on the 28th day of December, 2021 at 3:09 pm to be served on **SEIU LOCAL 49, 3536 SE 26TH AVE, PORTLAND, OR 97202**.

I, Wayne Savage, Process Server, being duly sworn, depose and say that on the **4th day of January, 2022 at 9:44 am, I:**

SERVED **SEIU LOCAL 49 at** 3536 SE 26TH AVE, PORTLAND, OR 97202 by personally serving a true copy of the Summons and First Amended Complaint upon NATALIE MCALLISTER, the clerk on duty in the office of the Registered Agent and who is authorized to accept service.

MAILING was completed on 1/11/2022 by mailing a true copy of the doucments served to the defendant at the address of service along with a statement regarding the date, time and manner of service.

**Description** of Person Served: Age: 34, Sex: F, Race/Skin Color: CAUCASIAN, Height: 5'5", Weight: 160, Hair: RED, Glasses: Y

I declare under penalty of perjury that I am a resident of the State of Oregon. I am a competent person 18 years of age or older and not a party to or attorney in this proceeding and am authorized to serve the process described herein. I certify that the person, firm, or corporation served is the identical one named in this action. I am not a party to nor an officer, director, or employee of, nor attorney for any party, corporate or otherwise.
I hereby declare that the above statement is true to the best of my knowledge and belief, and that it is made for use as evidence in court and is subject to penalty for perjury.

Subscribed and Sworn to before me on the 11th day of January, 2022 in the county of Multnomah by the affiant who is personally known to me.

_____
NOTARY PUBLIC
of OREGON

_____
**Wayne Savage, Process Server**
Process Server
1/11/2022
**Date**

**MALSTROM'S PROCESS SERVING CO.**
**155 CULVER LANE S**
**Salem, OR 97302**
**(503) 585-0234**

Our Job Serial Number: ONE-2021004642
Ref: CASTELLANOS

OFFICIAL STAMP
MYLINDA MORENO
NOTARY PUBLIC - OREGON
COMMISSION NO. 1009462
MY COMMISSION EXPIRES MARCH 02, 2025

EXHIBIT 2
Page 2 of 2



IN THE CIRCUIT COURT FOR THE STATE OF OREGON

FOR THE COUNTY OF MARION

EMILY CASTELLANOS,

        Plaintiff,

       v.

KAISER FOUNDATION HEALTH
PLAN OF THE NORTHWEST;
SERVICE EMPLOYEES
INTERNATIONAL UNION LOCAL
49,

        Defendants.

Case No. 21CV40666

SUMMONS

TO:     SEIU Local 49,  3536 SE 26th Ave, Portland, OR 97202.

     IN THE NAME OF THE STATE OF OREGON: You are hereby required to appear and defend the complaint filed against you in the above-entitled cause within 30 days from the date of service of this summons on you; and if you fail to appear and defend, the plaintiff will apply to the court for the relief demanded in the complaint.

### NOTICE TO DEFENDANT:
### READ THESE PAPERS CAREFULLY!

**You must "appear" in this case or the other side will win automatically. To "appear" you must file with the court a legal paper called a "motion" or "answer." The "motion" or "answer" must be given to the court clerk or administrator within 30 days along with the required filing fee. It must be in proper form and have proof of service on the plaintiff's attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.**

     If you have any questions, you should see an attorney immediately. If you need help in finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-3763 or toll-free in Oregon at (800) 452-7636.

                        */s/ Kevin T. Lafky*
                        Kevin T. Lafky, OSB#852633
                        klafky@lafky.com
                        LAFKY & LAFKY
                        429 Court Street NE
                        Salem, OR 97301
                        Ph: 503-585-2450
                        Attorneys for Plaintiff

**1 - SUMMONS**

EXHIBIT 3
Page 1 of 19

1   STATE OF OREGON          )
2                            ) ss.
    County of Marion         )
3       I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact
    and complete copy of the original summons in the above entitled action.
4

5                                              _/s/ Kevin T. Lafky_____
6                                              Kevin T. Lafky, OSB#852633
                                               klafky@lafky.com
7                                              LAFKY & LAFKY
                                               429 Court Street NE
8                                              Salem, OR 97301
                                               Ph: 503-585-2450
9                                              Attorneys for Plaintiff
10
11      **TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS:** You are
    hereby directed to serve a true copy of this summons, together with a true copy of the complaint
12  mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this
    summons is directed, and to make your proof of service on the reverse hereof or upon a separate
13  similar document which you shall attach hereto.
14

15                                             _/s/ Kevin T. Lafky_____
                                               Kevin T. Lafky, OSB#852633
16                                             klafky@lafky.com
                                               LAFKY & LAFKY
17                                             429 Court Street NE
                                               Salem, OR 97301
18                                             Ph: 503-585-2450
                                               Attorneys for Plaintiff
19

20

21

22

23

24

25

26

27

28

**1 - SUMMONS**

EXHIBIT 3
Page 2 of 19

1

2

3

4                    IN THE CIRCUIT COURT FOR THE STATE OF OREGON

5                              FOR THE COUNTY OF MARION

6   EMILY CASTELLANOS,                          Case No. 21CV40666

7              Plaintiff,
                                                SUMMONS
8       v.

9   KAISER FOUNDATION HEALTH
    PLAN OF THE NORTHWEST;
10  SERVICE EMPLOYEES
    INTERNATIONAL UNION LOCAL
11  49,

12             Defendants.

13      TO:      SEIU Local 49,  3536 SE 26th Ave, Portland, OR 97202.

14
        IN THE NAME OF THE STATE OF OREGON: You are hereby required to appear and
15  defend the complaint filed against you in the above-entitled cause within 30 days from the date
    of service of this summons on you; and if you fail to appear and defend, the plaintiff will apply
16  to the court for the relief demanded in the complaint.

17                          **NOTICE TO DEFENDANT:**
                        **READ THESE PAPERS CAREFULLY!**
18  **You must "appear" in this case or the other side will win automatically. To "appear" you
    must file with the court a legal paper called a "motion" or "answer." The "motion" or
19  "answer" must be given to the court clerk or administrator within 30 days along with the
    required filing fee. It must be in proper form and have proof of service on the plaintiff's
20  attorney or, if the plaintiff does not have an attorney, proof of service on the plaintiff.**
        If you have any questions, you should see an attorney immediately. If you need help in
21  finding an attorney, you may call the Oregon State Bar's Lawyer Referral Service at (503) 684-
    3763 or toll-free in Oregon at (800) 452-7636.
22

23                                      _/s/ Kevin T. Lafky_
                                        Kevin T. Lafky, OSB#852633
24                                      klafky@lafky.com
                                        LAFKY & LAFKY
25                                      429 Court Street NE
                                        Salem, OR 97301
26                                      Ph: 503-585-2450
                                        Attorneys for Plaintiff
27

28

**1 - SUMMONS**

EXHIBIT 3
Page 3 of 19

1  STATE OF OREGON            )
2                             ) ss.
   County of Marion           )
3       I, the undersigned attorney of record for the plaintiff, certify that the foregoing is an exact
   and complete copy of the original summons in the above entitled action.
4

5                                                    _/s/ Kevin T. Lafky_____
6                                                    Kevin T. Lafky, OSB#852633
                                                     klafky@lafky.com
7                                                    LAFKY & LAFKY
                                                     429 Court Street NE
8                                                    Salem, OR 97301
                                                     Ph: 503-585-2450
9                                                    Attorneys for Plaintiff
10
        **TO THE OFFICER OR OTHER PERSON SERVING THIS SUMMONS:** You are
11  hereby directed to serve a true copy of this summons, together with a true copy of the complaint
12  mentioned therein, upon the individual(s) or other legal entity(ies) to whom or which this
    summons is directed, and to make your proof of service on the reverse hereof or upon a separate
13  similar document which you shall attach hereto.

14

15                                                   _/s/ Kevin T. Lafky_____
                                                     Kevin T. Lafky, OSB#852633
16                                                   klafky@lafky.com
                                                     LAFKY & LAFKY
17                                                   429 Court Street NE
                                                     Salem, OR 97301
18                                                   Ph: 503-585-2450
19                                                   Attorneys for Plaintiff

20

21

22

23

24

25

26

27

28

**1 - SUMMONS**

EXHIBIT 3
Page 4 of 19

1

2

3

4

5          IN THE CIRCUIT COURT FOR THE STATE OF OREGON

6                      FOR THE COUNTY OF MARION

7

| | |
|---|---|
| **EMILY CASTELLANOS**, | Case No. 21CV40666 |
| Plaintiff, | **FIRST AMENDED COMPLAINT - WHISTLEBLOWER RETALIATION (ORS 659A.199 and ORS 659A.203); NURSING STAFF RETALIATION (ORS 441.183); BREACH OF CONTRACT; WRONGFUL TERMINATION; BREACH OF DUTY OF FAIR REPRESENTATION** |
| v. | |
| **KAISER FOUNDATION HEALTH PLAN OF THE NORTHWEST; SERVICE EMPLOYEES INTERNATIONAL UNION LOCAL 49**, | |
| Defendants. | Claim Not Subject to Mandatory Arbitration |
| | Jury Trial Requested |
| | Claim for Money Damages: $592,000 |

16      Emily Castellanos ("Plaintiff") alleges, at all time material herein:

17                       **<u>VENUE AND JURISDICTION</u>**

18                                    1.

19      Plaintiff is a resident of Marion County, Oregon.

20                                    2.

21      Defendant Kaiser Foundation Health Plan of the Northwest ("Kaiser") is an Oregon

22 Domestic Nonprofit Corporation with its principal place of business in Oakland, California.

23 Kaiser operates the North Lancaster Medical Office, located in Marion County, Oregon.

24                                    3.

25      Defendant Service Employees International Union Local 49 ("SEIU") is a labor union

26 with its principal place of business in Portland, Oregon.  SEIU is the exclusive certified

**Page 1 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 5 of 19

1  bargaining representative for employees working at Kasier facilities located in Marion County,

2  Oregon, including the North Lancaster Medical Office.

3                                                    4.

4          Venue and jurisdiction are appropriate in this Court because the events giving rise to

5  this complaint occurred primarily in Marion County, Oregon and because Kaiser has a

6  registered agent authorized to receive process in Marion County, Oregon.

7                                                    5.

8          Plaintiff requests a jury trial.

9                              **FACTUAL ALLEGATIONS**

10                                                   6.

11         In 2016, Plaintiff began working for Kaiser as a part-time Licensed Practical Nurse

12  ("LPN").  In 2018, Plaintiff was transferred to the Urgent Center at the North Lancaster

13  Medical Office.  Prior to her termination on October 17, 2020, Plaintiff did not have any

14  corrective or disciplinary actions.

15                                                   7.

16         SEIU and Kaiser have a Collective Bargaining Agreement ("CBA"), effective October

17  1, 2019 through September 30, 2023, that is the sole and complete agreement between the

18  parties.

19                                                   8.

20         Section 49.1 of the CBA provides "[n]o employee shall be disciplined or discharged

21  without just cause."  Section 49.1 of the CBA further provides "[i]t is the Employer's intent

22  normally to make use of progressive discipline in accordance with established practices and

23  policy."

24                                                   9.

25         Plaintiff was a dues-paying member of SEIU and a third-party beneficiary of the CBA

26  /////

**Page 2 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 6 of 19

10.

On or about August 2020, Plaintiff's supervisor asked Plaintiff to transition from part-time to full-time employment status.  Plaintiff explained that she could not do so because she was still a full-time student pursing her nursing license.  Plaintiff's supervisor warned her that Kaiser would look for reasons to "get rid of" part-time employees who declined the offer.

11.

On or about September 19, 2020, Tirzah Lanoie, Plaintiff's acting supervisor at the time, notified Plaintiff that the North Lancaster Medical Office was very short staffed.  Lanoie instructed Plaintiff and other LPNs, including Staci Hoover, to rely on the two medical assistants ("MAs") in the office to help room patients, administer immunizations, and administer COVID-19 tests.  Lanoie specifically noted that both MAs were trained and approved to administer COVID-19 tests.

12.

Later that day, the MAs approached Plaintiff and Hoover to offer assistance with administering COVID-19 tests.  Based on Lanoie's previous statements and actions, Plaintiff and Hoover agreed that the MAs could administer COVID-19 tests.

13.

At the end of her shift, Plaintiff informed Lenae Trussell, her shift lead, that the staffing issues at the North Lancaster Medical Office was jeopardizing staff and patient safety.

14.

The following day, on or about September 20, 2020, Plaintiff informed Aimee Orr-Besa, the department supervisor, that she and other LPNs had been assigned too many nursing tasks.  Plaintiff expressed her concerns that she could not perform the nursing tasks in a safe and efficient manner and that she was worried about patient safety.

15.

The following week, on or about October 1, 2020, Plaintiff met with Orr-Besa again to

**Page 3 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 7 of 19

1    discuss her concerns with the staffing issues at the North Lancaster Medical Office.  Plaintiff

2    stressed that she did not believe the Urgent Care Center could continue to treat certain

3    conditions due to the low staffing and expressed genuine fears that doing so would place

4    patients at risk and could even result in the death of a patient.

5                                        16.

6         Plaintiff told Orr-Besa that she was going to call a compliance hotline to discuss and

7    disclose her concerns regarding the staffing issues.  Orr-Besa instructed Plaintiff not to contact

8    the compliance hotline under any circumstances.

9                                        17.

10        Three days later, on or about October 4, 2020, Kaiser informed Plaintiff that it was

11   investigating the events of September 19, 2020; specifically allegations that Plaintiff had

12   allowed MAs to administer COVID-19 tests despite being instructed not to.

13                                       18.

14        Plaintiff denied, and continues to deny, the allegation that she had been specifically

15   instructed by a supervisor to not allow MAs to administer COVID-19 tests.

16                                       19.

17        Kaiser claimed that Plaintiff's alleged misconduct was "intentional/ gross negligence/

18   unsafe action/inaction. [Plaintiff] demonstrated no regard for client safety and harm almost

19   certainly would occur . . . Willful egregious/flagrant choice, put own interest above that of the

20   client/ agency/ public. Intentionally neglected red flags. Substantial and unjustifiable risk."

21                                       20.

22        Kaiser claimed Plaintiff's alleged conduct constituted fraud, waste, and abuse in

23   violation of Kaiser Standards 1 (lacking judgment, integrity, accountability, and respect;

24   dishonesty), 3 (showing deception and misrepresentation of the truth to benefit oneself), and 7

25   (blatant display of behaviors that lack dignity and respect).  Kaiser also claimed that Plaintiff

26   was insubordinate and violated the Oregon Nursing Standards as "MA's do not hold the scope

**Page 4 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 8 of 19

1  of practice to manage Covid testing from the nurse schedule."

2                                 21.

3      On or about October 17, 2020, Kaiser held a Joint Discovery meeting.  Immediately

4  following this meeting, Kaiser terminated Plaintiff's employment.

5                                 22.

6      Pursuant to Kaiser policies, after the Joint Discovery meeting, Kaiser must engage in

7  conflict resolution, including corrective action and progressive discipline.  Kaiser may only

8  discipline an employee whose behavior rises to the level of gross misconduct or gross

9  negligence.

10                                 23.

11     Kaiser defines "misconduct" as "a willful violation of the standards of behavior an

12 employer has the right to expect of an employee.  An act that amounts to a willful disregard of

13 an employer's interests or recurring negligence demonstrating wrongful intent is misconduct.

14 Isolated instances of poor judgment, good faith errors, unavoidable accidents, absences due to

15 illness, or mere inefficiency resulting from lack of skills or experience are not misconduct."

16                                 24.

17     Kaiser defines "gross misconduct" as "an offense punishable as a felony[.]"  Lesser

18 offenses may also be gross misconduct if there is a connection between the offense and the

19 employee's job, the employee has the ability to understand the gravity of her conduct, the

20 employee reasonable should have known her actions could cause harm to the employer, and

21 the employee's offense was affirmative and willful, not simply negligent.  Kaiser's gross

22 misconduct policy states that "the employer has the burden of proving gross misconduct."

23                                 25.

24     Kaiser claimed that Plaintiff's alleged conduct rose to the level of "gross misconduct"

25 because it demonstrated an absence of care in comparison to a similarly situated employee in

26 similar circumstances, was a violation of professional practice standards, and willful

**Page 5 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 9 of 19

1  insubordination.

2                                      26.

3         Kaiser never investigated or disciplined Hoover despite the fact that Hoover was a

4  similarly situated employee who had also authorized and instructed the two MAs to administer

5  COVID-19 tests on patients in the same manner as Plaintiff.

6                                      27.

7         Neither the Washington State Nursing Care Quality Assurance Commission or the

8  Oregon State Board of Nursing found that Plaintiff violated any professional practice

9  standards.

10                                     28.

11        On or about November 18, 2020, the Washington State Nursing Care Quality

12  Assurance Commission closed the complaint against Plaintiff without investigation because

13  the allegation against her fell below the threshold.

14                                     29.

15        On or about March 18, 2021, the Oregon State Board of Nursing voted that Plaintiff's

16  alleged misconduct did not warrant any discipline and closed the case.

17                                     30.

18        Additionally, Kaiser's Ambulatory COVID-19 Screening and Guidance for

19  RN/LPN/MA  provides that "[i]t is within the Medical Assitant's clinic activities to be

20  delegated the task of COVID-19 nasal swabbing."

21                                     31.

22        Plaintiff's termination violated Section 49.1 of the CBA because it was not for cause

23  and because Kaiser did not engage in progressive discipline.  Additionally, Kaiser did not

24  conduct a complete and fair investigation and did not follow its own investigation policies.

25                                     32.

26        Following her improper and unlawful termination by Kaiser, Plaintiff filed a grievance

**Page 6 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 10 of 19

1   and followed all procedures set forth in the CBA.  SEIU carried out Plaintiff's grievance

2   through Step Three of the grievance process, but failed and refused to pursue the grievance to

3   arbitration.

4                                          33.

5          As a result of Kaiser's and SEIU's unlawful actions, Plaintiff has suffered economic

6   damages in an amount to be proven with particularity at trial, but which sum is alleged to be

7   $80,000 in the form of lost wages and benefits, future earnings and benefits, and impairment

8   to earning capacity and will continue to suffer approximately $5,500 per month in lost wages

9   and benefits.

10                                         34.

11         As a result of Kaiser's and SEIU's unlawful actions, Plaintiff has also suffered

12  economic damages in an amount to be proven with particularity at trial, but which sum is

13  alleged to be $12,000 in the form medical and/or mental health treatment.

14                                         35.

15         As a result of Kaiser's and SEIU's unlawful actions, Plaintiff has suffered and

16  continues to suffer extreme mental and emotional distress, including damage to her

17  professional reputation, loss of enjoyment of life, depression, anxiety, panic attacks, fear,

18  worry, grief, anger, confusion, embarrassment, humiliation, and loss of sleep.  Plaintiff

19  requests non-economic damages in an amount to be proved with particularity at trial, but

20  which sum is alleged to be $500,000.

21         **FIRST CAUSE OF ACTION - VIOLATION OF ORS 659A.199**

22                  **WHISTLE BLOWER RETALIATION**

23                           **(Kaiser)**

24                                         36.

25         Plaintiff incorporates and re-alleges paragraphs 1 through 35 above.

26  /////

**Page 7 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 11 of 19

37.

Pursuant to ORS 659A.199, "[i]t is an unlawful employment practice for an employer to discharge, demote, suspend or in any manner discriminate or retaliate against an employee with regard to promotion, compensation or other terms, conditions or privileges of employment for the reason that the employee has in good faith reported information that the employee believes is evidence of a violation of a state or federal law, rule or regulation."

38.

As described above in more detail, Plaintiff made protected complaints concerning information that she reasonably believed was evidence of a violation of state or federal law, rule, or regulation to Orr-Bessa and Trussell.

39.

Kaiser unlawfully terminated Plaintiff's employment based, in substantial part, on those protected complaints.

40.

As a result of Kaiser's unlawful employment practices, Plaintiff requests equitable relief in the form of reinstatement to the same or equivalent position she previously held and reinstatement of full benefits and seniority rights as if she had continued in employment. Plaintiff further requests economic and nonneconomic damages as described in paragraphs 33 through 35, and reasonable costs, expert witness and attorney fees pursuant to ORS 659A.885.

**SECOND CAUSE OF ACTION - VIOLATION OF ORS 659A.203**

**WHISTLE BLOWER RETALIATION**

**(Kaiser)**

41.

Plaintiff incorporates and re-alleges paragraphs 1 through 42 above.

42.

Pursuant to ORS 659A.203, it is an unlawful employment practice for an employer to

**Page 8 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 12 of 19

"[p]rohibit any employee from disclosing, or take or threaten to take disciplinary action against an employee for the disclosure of any information that the employee reasonably believes is evidence of [a] violation of any federal, state or local law, rule or regulation by the public or nonprofit employer; [or] [m]ismanagement, gross waste of funds or abuse of authority or substantial and specific danger to public health and safety resulting from action of the public or nonprofit employer[.]"

43.

As explained above in more detail, Kaiser unlawfully prohibited Plaintiff from disclosing information that she reasonably believed was evidence of a violation of a federal, state, or local law, rule or regulation and mismanagement that posed a substantial danger to public health and safety to the compliance hotline.  Kaiser then unlawfully terminated Plaintiff's employment, in substantial part, because Plaintiff disclosed such information.

44.

As a result of Kaiser's unlawful employment practices, Plaintiff requests equitable relief in the form of reinstatement to the same or equivalent position she previously held and reinstatement of full benefits and seniority rights as if she had continued in employment. Plaintiff further requests economic and nonneconomic damages as described in paragraphs 33 through 35, and reasonable costs, expert witness and attorney fees pursuant to ORS 659A.885.

### THIRD CAUSE OF ACTION - VIOLATION OF ORS 441.183

### NURSING STAFF RETALIATION

### (Kaiser)

45.

Plaintiff incorporates and re-alleges paragraphs 1 through 44 above.

46.

Pursuant to ORS 441.183(1)(a), a hospital may not take retaliatory action against a nursing staff because the nursing staff discloses a policy or practice that the nursing staff

**Page 9 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 13 of 19

1   "reasonably believes is in violation of law or a rule or is a violation of professional standards

2   of practice that the nursing staff reasonably believes poses a risk to the health, safety or

3   welfare of a patient or the public" to a manager.

4                                              47.

5          As described above in more detail, Plaintiff made protected disclosures to Orr-Bessa

6   and Trussell concerning staffing policies and practices at the North Lancaster Medical Office.

7   Plaintiff reasonably believed the staffing policies and practices violated law, rule, or

8   professional standards of practice and reasonably believed that Kaiser patients' health, safety,

9   and welfare were at risk.

10                                             48.

11         Kaiser unlawfully terminated Plaintiff's employment based, in substantial part, on

12  those protected disclosures.

13                                             49.

14         As a result of Kaiser's unlawful practices, Plaintiff requests equitable relief in the form

15  of reinstatement to the same or equivalent position she previously held and reinstatement of

16  full benefits and seniority rights as if she had continued in employment.  Plaintiff further

17  requests economic and nonneconomic damages as described in paragraphs 33 through 35, and

18  reasonable costs, expert witness and attorney fees pursuant to ORS 441.183.

19                  **FOURTH CAUSE OF ACTION - BREACH OF CONTRACT**

20                                          **(Kaiser)**

21                                             50.

22         Plaintiff incorporates and re-alleges paragraphs 1 through 49 above.

23                                             51.

24         Section 49.1 of the CBA provides "[n]o employee shall be disciplined or discharged

25  without just cause."  Section 49.1 further provides "[i]t is the Employer's intent normally to

26  make use of progressive discipline in accordance with established practices and policy."

**Page 10 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 14 of 19

1                                                52.

2          Pursuant to Kaiser's policies, "just cause" for discipline or discharge exists only when

3  an employee's rises to the level of gross misconduct or gross negligence.

4                                                53.

5          Kaiser defines "gross misconduct" as "an offense punishable as a felony[.]"  Lesser

6  offenses may also be gross misconduct if there is a connection between the offense and the

7  employee's job, the employee has the ability to understand the gravity of her conduct, the

8  employee reasonable should have known her actions could cause harm to the employer, and

9  the employee's offense was affirmative and willful, not simply negligent.

10                                               54.

11         Kaiser's gross misconduct policy states that "the employer has the burden of proving

12  gross misconduct."

13                                               55.

14         Kaiser claimed that Plaintiff's alleged misconduct rose to the level of "gross

15  misconduct" because it demonstrated an absence of care in comparison to a similarly situated

16  employee in similar circumstances, was a violation of professional practice standards, and was

17  willful insubordination.

18                                               56.

19         The fact that Hoover authorized and instructed MAs to perform COVID-19 tests on

20  patients in the same manner as Plaintiff demonstrates that Plaintiff did not have an absence of

21  care in comparison to a similarly situated employee in similar circumstances.  Rather, it is

22  objective evidence that Plaintiff acted with the same level of care in comparison to a similarly

23  situated employee in a similar circumstances.

24                                               57.

25         Additionally, Plaintiff did not violate any professional practice standards as supported

26  by the Washington State Nursing Care Quality Assurance Commission and the Oregon State

**Page 11 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 15 of 19

1   Board of Nursing dismissal of the allegations against Plaintiff.

2                                   58.

3        Moreover, Kaiser's Ambulatory COVID-19 Screening and Guidance for RN/LPN/MA

4   provides that "[i]t is within the Medical Assitant's clinic activities to be delegated the task of

5   COVID-19 nasal swabbing."

6                                   59.

7        Even if Plaintiff had been insubordinate, which she disputes, insubordination is not a

8   punishable offense, felony or otherwise.  Additionally, Kaiser failed to demonstrate in any

9   capacity how Plaintiff's alleged insubordination could have caused it harm.  As such, Kaiser

10  failed to meet its burden of proving gross misconduct.

11                                  60.

12       For these reasons, Kaiser did not terminate Plaintiff for "just cause."  Instead, Kaiser

13  terminated Plaintiff because she refused to transition to full-time employment and because she

14  made protected disclosures of information she believed was evidence of a violation of law or a

15  rule and a violation of professional standards of practice that posed a risk to the health, safety

16  or welfare of a patient.

17                                  61.

18       Accordingly, Kaiser violated Section 49.1 of the CBA because it terminated Plaintiff

19  without just cause and without use of progressive discipline in accordance with its established

20  practices and policies.

21                                  62.

22       As a result of Kaiser's breach of the CBA, Plaintiff requests equitable relief in the

23  form of reinstatement to the same or equivalent position she previously held and reinstatement

24  of full benefits and seniority rights as if she had continued in employment.  Plaintiff further

25  requests economic and nonneconomic damages as described in paragraphs 33 through 35.

26  /////

**Page 12 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 16 of 19

1    **FIFTH CAUSE OF ACTION - WRONGFUL TERMINATION**

2    **(Kaiser)**

3    63.

4    Plaintiff incorporates and re-alleges paragraphs 1 through 62 above.

5    64.

6    As explained above in more detail, Kaiser wrongfully terminated Plaintiff because she

7    would not transition to full-time employment status and because she made protected

8    disclosures of information she reasonably believed was evidence of a violation of federal, state

9    or local law, rule or regulation; mismanagement that posed a substantial and specific danger to

10    public health and safety; and violation of professional standards of practice that posed a risk to

11    the health, safety or welfare of a patient.

12    65.

13    As a result of Kaiser's unlawful employment practices, Plaintiff requests equitable

14    relief in the form of reinstatement to the same or equivalent position she previously held and

15    reinstatement of full benefits and seniority rights as if she had continued in employment.

16    Plaintiff further requests economic and nonneconomic damages as described in paragraphs 33

17    through 35.

18    **SIXTH CAUSE OF ACTION - BREACH OF DUTY OF FAIR REPRESENTATION**

19    **(SEIU)**

20    66.

21    Plaintiff incorporates and re-alleges paragraphs 1 through 65 above.

22    67.

23    As the collective bargaining agent for Plaintiff, SEIU had a duty to fairly represent

24    Plaintiff's collective bargaining interest and to refrain from acting arbitrarily, discriminatorily,

25    or in bad faith in protecting Plaintiff's interests.

26    /////

**Page 13 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 17 of 19

68.

On or about October 17, 2020, Kaiser wrongfully terminated Plaintiff without just cause and without following its procedures regarding progressive discipline in violation of Section 49.1 of the CBA.

69.

As Plaintiff's collective bargaining representative, SEIU knew or should have known, through its agents and employees, that grievances involving an employee's discharge are routinely referred to arbitration especially where, as here, evidence is readily available which would cause the penalty imposed upon Plaintiff by Kaiser to be mitigated by an arbitrator.

70.

Although the CBA expressly provided a procedure by which Plaintiff's grievance could be referred to arbitration, and in spite of its knowledge that grievances involving an employee's discharge are routinely referred to arbitration, SEIU refused to submit Plaintiff's grievance to arbitration.

71.

SEIU's failure to adhere to the well established practice of referring grievances to arbitration, coupled with the fact that SEIU failed to perform any investigation or even request Plaintiff's personnel files, constitutes arbitrary, discriminatory, and bad faith conduct on the part of SEIU.

72.

There are no further remedies that Plaintiff can pursue under the grievance procedure provided by the CBA.

73.

As a direct and proximate result of SEIU's arbitrary, discriminatory and bad faith failure to refer her grievance to arbitration, Plaintiff has been wrongfully denied all opportunity to have permanent, gainful employment with Kaiser.

**Page 14 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 18 of 19

74.

Plaintiff requests economic and nonneconomic damages as described in paragraphs 33 through 35.

WHEREFORE, Plaintiff requests the following for her claims for relief:

1.    Economic damages in an amount to be proven at trial, but which sum is alleged to be $92,000, together with future economic damages;

2.    Non-economic damages in an amount to be proven at trial, but which sum is alleged to be $500,000;

3.    Equitable relief in the form of reinstatement to the same or equivalent position she previously held and reinstatement of full benefits and seniority rights as if she had continued in employment;

4.    Reasonable costs, expert witness and attorney fees pursuant to ORS 659A.885 and ORS 441.183 as designated above;

5.    Costs and disbursements incurred in this matter; and

6.    Any other relief this court deems just and equitable.

DATED this 6th day of December, 2021.

*/s/ Amanda L. Reilly*
Kevin T. Lafky, OSB#852633
klafky@lafky.com
Amanda L. Reilly, OSB#194422
areilly@lafky.com
LAFKY & LAFKY
429 Court St. NE
Salem, OR 97301
Tel. (503) 585-2450
Of Attorneys for Plaintiff

**Page 15 - FIRST AMENDED COMPLAINT**

LAFKY & LAFKY
ATTORNEYS AT LAW
429 COURT ST. NE, SALEM, OR 97301
TELEPHONE (503) 585-2450 - FAX (503) 585-0205 - Email Info@lafky.com

EXHIBIT 3
Page 19 of 19